IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: TIMOTHY CHARLES MOORE | : | CIVIL ACTION |
| EMBASSY BANK FOR THE LEHIGH VALLEY | : | |
| v. | : | |
| FIRST NIAGARA BANK, N.A. | : | NO. 16-3873 |
| v. | : | |
| TIMOTHY CHARLES MOORE, REBECCA JO MOORE | : | |
| v. | : | |
| EMBASSY BANK FOR THE LEHIGH VALLEY, FREDERICK L. REIGLE and UNITED STATES TRUSTEE | : | (BANKRUPTCY NO. 13-11090) |

_____

| | | |
|---|---|---|
| IN RE: RICHARD T. MOORE | : | CIVIL ACTION |
| EMBASSY BANK FOR THE LEHIGH VALLEY | : | |
| v. | : | |
| RICHARD T. MOORE, CAROL J. MOORE | : | NO. 16-3874 |
| v. | : | |
| FIRST NIAGARA BANK, N.A., FREDERICK L. REIGLE and UNIED STATES TRUSTEE | : | (BANKRUPTCY NO. 14-11692) |

## MEMORANDUM OPINION

**Savage, J.**                                                                             **March 16, 2017**

      For the second time, Embassy Bank for the Lehigh Valley appeals from a Bankruptcy Court order directing the proceeds from the sale of the debtors' land to First

Niagara Bank. The crux of the dispute is whether First Niagara's predecessor, Harleysville National Bank, had released its mortgage on the debtors' land before Embassy Bank recorded its security interest in the same land. The release contained conflicting descriptions of the land released. Depending on which description controls, the release covered or did not cover the land which Embassy Bank claims is subject to its lien.

Bankruptcy Judge Richard Fehling awarded the proceeds to First Niagara after finding that the release did not cover the land. Because Judge Fehling did not explain why he did not use the metes and bounds property description in the exhibit to the release to determine what property had been released, we remanded the case. On remand, Judge Fehling determined that it would constitute manifest error to rely on the metes and bounds description which had been mistakenly attached to the release.

We conclude that Judge Fehling appropriately considered the circumstances surrounding the execution of the release in determining what land the parties intended it to cover. He found that the parties had not intended to release the entirety of the land described in the metes and bounds description because the body of the release described only a portion of the land. His findings are not clearly erroneous. Therefore, we shall affirm.

## Background[1]

On May 7, 2002, Timothy C. Moore and Carol J. Moore (the Moores) acquired a parcel of land located at 215 East 20th Street in Northampton, Pennsylvania. The property, previously referred to as Lots 8 and 9 of Laubach Estates, had a uniform

---

[1] The facts are recited from Judge Fehling's March 31, 2015 memorandum opinion. *See generally In re Moore* ("*Moore I*"), 528 B.R. 129 (Bankr. E.D. Pa. 2015).

2

parcel identifier (UPI) of Map L4SW4B, Block 5, Lot 1. On July 6, 2004, the Moores granted a mortgage in the property to Harleysville.[2]

The Moores later subdivided the land into two lots. On March 23, 2005, they recorded a subdivision map, designating one lot as Lot 1A, and the other as Lot 1 (residual Lot 1).[3] On August 24, 2005, at the Moores' request, Harleysville executed a release of mortgage, which was recorded on September 6, 2005.

The release describes the land released as "Lot 2, Map L4SW4B, Block 5, Lot 1A."[4] It lists the address as 215 East 20th Street,[5] the same address as the original lot before subdivision. It attaches and incorporates the May 7, 2002 deed conveying the original Lot 1 to the Moores. The deed identifies the land as Lots 8 and 9 of Laubach Estates and describes it by metes and bounds.[6] It recites the property's UPI as "Map L4SW4B, Block 5, Lot 1."[7] In other words, the body of the release describes the land as only Lot 1A, but the deed attached to the release describes the land as including both residual Lot 1 and Lot 1A.

On April 11, 2006, the Moores executed a deed conveying residual Lot 1 to themselves. In describing the land, the deed refers to the recorded subdivision plan. It recites the UPI as Map L4SW4B, Block 5, Lot 1. On May 31, 2006, the Moores granted two mortgages in residual Lot 1 to Wachovia Bank. On August 21, 2007, seeking to

---

[2] Harleysville was subsequently acquired by First Niagara. *See id.* at 131.

[3] Lot 1A was later assigned a unique street address, 209 East 20th Street.

[4] Release of Mortgage, Aug. 24, 2005, Ex. FN-G ("Release") (Bankr. No. 13-11090, Doc. No. 85-6), at 2.

[5] *Id.*

[6] *Id.* at 3.

[7] *Id.*

3

refinance the Wachovia mortgages, they applied for a commercial loan in the amount of $136,000.00 from Embassy Bank. The Moores and Embassy Bank agreed to secure the loan by a first mortgage lien on residual Lot 1.

Embassy Bank did not order a full title search or purchase title insurance because bank policy did not require a full title search or title insurance for commercial loans of $150,000.00 or less. Instead, it relied on a limited search going back only to April 11, 2006, the date the Moores reconveyed residual Lot 1 to themselves. Consequently, Embassy Bank was unaware of Harleysville's 2004 lien.

After the Moores filed their Chapter 13 bankruptcy petitions,[8] they moved to sell residual Lot 1 free and clear of liens. Granting their motions, the Bankruptcy Court directed that the net proceeds from the sale be distributed to the lienholders according to the priority to be determined later. Residual Lot 1 was sold for $125,000.00, which was not sufficient to satisfy both First Niagara's and Embassy Bank's claims.

Judge Fehling held a hearing on the cross-motions for distribution of the proceeds. He concluded the Harleysville release applied only to Lot 1A and Embassy Bank was not a bona fide purchaser. Had Embassy Bank performed a thorough title search, it would have discovered that Harleysville released its lien only on Lot 1A, not on residual Lot 1, giving First Niagara, as Harleysville's successor in interest, a senior lien on residual Lot 1. Accordingly, Judge Fehling determined that First Niagara's

---

[8] Carol J. Moore and her husband, Richard T. Moore, are debtors in Civil Action No. 15-1853 (Bankr. No. 14-11692). Timothy C. Moore and his wife, Rebecca Jo Moore, are debtors in Civil Action No. 15-2007 (Bankr. No. 13-11090). Because the issues and parties in both appeals are identical, we consider them concurrently.

interest was senior to Embassy Bank's and directed distribution of the sale proceeds to First Niagara.[9]

Embassy Bank appealed the ruling. In March 2016, we vacated and remanded to the Bankruptcy Court to reconcile the different descriptions of the land in the release.[10] On remand, in his attempt to resolve the conflicting descriptions, Judge Fehling acknowledged that a more precise description of land is generally given greater weight than less specific ones. A metes and bounds description trumps a street address or a less precise descriptor.[11] However, he explained that when a recorded document is ambiguous, the court must examine the intent of the parties to resolve the ambiguity. In doing so, Judge Fehling found that the metes and bounds description of original Lot 1 was negligently and carelessly included in the release.[12] He concluded that the parties to the Harleysville release had intended to release only Lot 1A.

Embassy Bank appeals again, arguing that the mistaken inclusion of residual Lot 1 in the Harleysville release does not warrant directing distribution of proceeds to First Niagara. According to Embassy Bank, First Niagara failed to prove that a mutual mistake took place.

## Standard of Review

We review the bankruptcy court's legal determinations *de novo* and its factual findings for clear error. *In re Friedman's, Inc.*, 738 F.3d 547, 552 (3d Cir. 2013) (quoting

---

[9] *Moore I*, 528 B.R. at 136.

[10] Order & Mem. Op. (Civ. A. No. 15-1853, Doc. Nos. 8, 9).

[11] *In re Moore* ("*Moore II*"), Nos. 13-11090 & 14-11692 (Doc. No. 142), 2016 WL 3619944, at *1 (Bankr. E.D. Pa. June 28, 2016).

[12] *Id.* at *4.

*In re Goody's Family Clothing, Inc.*, 610 F.3d 812, 816 (3d Cir. 2010)).  If a finding involves a mixed question of law and fact, we apply the appropriate standard of review to each component.  *In re Montgomery Ward Holding Corp.*, 326 F.3d 383, 387 (3d Cir. 2003).

Findings of fact will not be disturbed unless they are clearly erroneous.  *Stern v. Marshall*, 564 U.S. 462, 487 (2011) (quoting Fed. R. Bankr. P. 8013)); *In re IT Grp., Inc.*, 448 F.3d 661, 667 (3d Cir. 2006); Fed. R. Bankr. P. 8013 advisory committee's note.  A factual finding is clearly erroneous only if the district court is firmly convinced that the bankruptcy court made a mistake.  *Vento v. Dir. of V.I. Bureau of Internal Revenue*, 715 F.3d 455, 468 (3d Cir. 2013) (citation omitted).  The district court may not engage in independent fact finding.  *Nantucket Investors II v. Cal. Fed. Bank*, 61 F.3d 197, 210 n.19 (3d Cir. 1995) (citing 28 U.S.C. § 158(a)).

### Release of Mortgage

The release of mortgage contains three descriptions of the land released.  The body of the document describes the property being released from the Harleysville mortgage as "Parcel No: Lot 2, Map L4SW4B, Block 5, Lot 1A."[13]  This description refers to Lot 1A, one of the two parcels created by the subdivision of original Lot 1.  The release itself refers to the property as "215 East 20th Street, Northampton, PA 18067."[14]  This is the postal address assigned to the original Lot 1 before it was subdivided.  The third description appears in the first page of the deed conveying the original lot to the

---

[13] Release at 2.

[14] *Id.*

Moores before the subdivision which is attached to the release.  It describes the metes and bounds of original Lot 1, which includes both Lot 1A and residual Lot 1.[15]

The release's description of the property refers to Lot 1A.  The postal address and the metes and bounds describe original Lot 1, which was later subdivided into residual Lot 1 and Lot 1A.  Consequently, there is a conflict between the three descriptions of the released property in the release.

On remand, Judge Fehling reasoned that the contradictory descriptions of the land created an ambiguity.  To resolve the ambiguity, he considered the surrounding circumstances to discern the intent of the parties.  He found that the contradictory descriptions in the release were the result of a mutual mistake.  Thus, based on the circumstances surrounding the creation of the release, he concluded that Harleysville and the Moores intended to release only Lot 1A.

Determining the intent of the parties from the surrounding circumstances to resolve the ambiguity was not erroneous.  When conflicting descriptions render a recorded instrument ambiguous, the intention of the parties at the time of the transaction governs.  *Wagner v. Landisville Camp Meeting Ass'n*, 24 A.3d 374, 378 (Pa. Super. 2011) (citing *Stewart v. Chernicky*, 266 A.2d 259, 263 (Pa. 1970)); *Craig v. Craig*, 56 Pa. D. & C.4th 353, 356 (Pa. Ct. Com. Pl. 2002) (citing *Maxwell v. Saylor*, 58 A.2d 355, 356 (Pa. 1948)), *aff'd*, 832 A.2d 547 (Pa. Super. 2003).  The intention of the parties is revealed from analyzing the subject matter and the surrounding circumstances at the time the transaction took place.  *Wagner*, 24 A.3d at 378.

---

[15] *Id.* at 3 ("Schedule A").

It is clear that the Moores and Harleysville intended to enter into an agreement releasing Lot 1A only.  Lot 1A was vacant at the time and the Moores' home was located on residual Lot 1.  Emails exchanged between Harleysville employees unequivocally demonstrate that neither Harleysville nor the Moores intended to release the original Lot 1 in its entirety.  Rather, in a request to process the release, a Harleysville employee wrote, "Tim [Moore] wants one of those parcels released.  The parcel that will remain as collateral was recently appraised . . . ."[16]  Later in the correspondence, the same employee stated:

> Timothy C. Moore and Carol J. Moore have requested release of Lot 2, Map L4SW4B, Block 5, **Lot 1A** for loan 1321.  When the loan was originally booked, the collateral was 215 E. 20th Street, Northampton, PA 18067.  Subsequently, the collateral was subdivided into two lots.  The county of Northampton uniform parcel identifier lists the two lots as Lot 1, map L4SW4B, Block 5 Lot 1, and Lot 2, map L4SW4B, Block 5, Lot 1A.[17]

The circumstances at the time show that the parties to the release, Harleysville and the Moores, intended to include only Lot 1A in the release.  At the time the release was drafted, the Moores still owed Harleysville approximately $119,825 on the mortgage.  Harleysville agreed to release the vacant Lot 1A because residual Lot 1, which had recently been appraised at $122,800, was sufficient to protect its security interest.[18]  Thus, Judge Fehling did not err in finding that the descriptions of the original Lot 1—both the postal address and the metes and bounds description—were mistakenly included in the mortgage release.

---

[16] Email Exchange Between Harleysville Employees, Aug. 12, 2005, Ex. FN-E (Bankr. No. 14-11692), at 1–2.

[17] *Id.* (emphasis added).

[18] *Id.*

## Conclusion

The Bankruptcy Court's factual findings are not clearly erroneous and its legal determinations were correct. It did not err in finding that Harleysville did not intend to and did not release residual Lot 1 from its mortgage. Therefore, we shall affirm.